GEOFFREY HANSEN
Acting Federal Public Defender
SOPHIA WHITING
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, California 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Sophia_Whiting@fd.org

Counsel for Defendant BARRIOS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 19-553 RS |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| v. | |
| VICTOR BARRIOS, | |
| Defendant. | |

**INTRODUCTION**

On March 23, 2021, Victor Manuel Barrios Mendoza pled guilty to illegally re-entering the United States. He first came to the United States 29 years ago when he was just 15 years old. The instant case was initiated when Mr. Barrios was arrested by Immigration and Customs Enforcement (ICE) on his way to work and referred for federal prosecution. Since before his arrest, Mr. Barrios has had a U nonimmigrant status ("U visa") application pending and a path to lawful status. Declaration of Ricardo Aguayo ("Aguayo Decl."). He works in construction to support his family and is additionally a caretaker to his special needs daughter, who requires full-time care by Mr. Barrios and his disabled wife.[1]

Had Mr. Barrios been given a Fast Track departure—the plan before his safety was put at significant risk in jail—his sentencing guidelines would be 8 to 14 months with the option of home detention in lieu of additional custody. *See* USSG §5C1.1(c). Since that was not a safe option, Mr. Barrios agrees pursuant to the plea agreement that his guidelines are 18 to 24 months. The government recommends a sentence of 10 months. In light of the mitigating factors, in addition to the current risks still posed by being imprisoned during the COVID-19 pandemic, Mr. Barrios respectfully requests that the Court vary downward under the factors of 18 U.S.C. § 3553(a) and impose upon him a sentence of time served (three months custody and 16 months of home confinement) and five additional months of home confinement, as a condition of three years' supervised release.

**BACKGROUND**

Victor Manuel Barrios Mendoza was born into a desperately poor family in Guatemala City, Guatemala. *See* Presentence Investigation Report (PSR) ¶ 45. His parents were unable to provide them with sufficient food, water, and clothing. *Id*. His father was physically abusive, to the point of his mother requiring medical attention. PSR ¶ 46. The children would be targeted if they attempted to intervene. *See id*.

---

[1] I refer to Mr. Barrios' significant other as his wife throughout, though they are not legally married. They have been together nearly three decades and share three children.

At just 15 years old, Mr. Barrios was compelled to leave home to find a way to support his family by travelling alone to the United States. PSR ¶ 48. Still a child, he was alone and homeless in Los Angeles, sleeping on the streets. Declaration of Sophia Whiting (Whiting Decl.), Ex. A. He was willing to work tirelessly, but his youth and naivety made him an easy target. *See id*. He ultimately landed in the Bay Area and began working 12-hour days between cleaning and food services jobs. *See id*.

Mr. Barrios had recently turned 20 years old, in 1996, when he committed a terrible and life-changing offense that he deeply regrets. *See* PSR ¶ 27; Whiting Decl. Ex A. This sexual assault offense was determined to be a misdemeanor and he was sentenced to 60 days of custody and three years of probation. *Id*. He was also required to register annually as a sex offender, which largely lies at the root of his subsequent criminal conduct. *See id*. This offense also prevented him from receiving legal status in 2003, for which he was otherwise eligible due to a finding that his U.S. citizen daughter with special needs would suffer exceptional and unusual hardship upon his deportation.

After the 1996 misdemeanor for sexual assault, each of Mr. Barrios' subsequent convictions are for either failure to register as a sex offender or illegal (re)entry. PSR ¶ 27-32. His longest sentence served was time served (192 days) for illegal re-entry in 2010. PSR ¶ 31. As Mr. Barrios and his family explain, he had no desire to flout the law; he just did not feel he had a choice. *See* Whiting Decl. Ex. A-I. He felt forced to choose between two wrongs—break the law or abandon his particularly needy family. *See* Whiting Decl. Ex. A. Truly believing, based on common sense and past experience, that registering with the police would cause his deportation left him with the impression that no choice could be both legally and morally sound. *See id*. He chose his family.

Mr. Barrios' responsibilities to his wonderful family are not typical. Mr. Barrios is just one of two people who are able to care for his autistic adult daughter. *See* PSR ¶ 50, 52; Whiting Decl. A, B. The other is his wife, Maricruz, but that is becoming more difficult as her own health worsens. *See id*. His daughter cannot function without supervision and requires full time intensive care. *See id*. She is non-verbal, requires assistance to eat and use the restroom,

uses diapers, and relies of physical forms of communication that can be a danger to herself and others. *See id.*

Over the past few years, Maricruz's health has been deteriorating. She suffers from arthritis, shoulder pain, diabetes, and headaches. PSR ¶ 53. The physical aspect of caring for their daughter is incredibly taxing, and she does not know how she will do it alone. *See* Whiting Decl. Ex. B. She cannot pay someone else to help—both because they do not have the finances and because their daughter's needs are so unique and demanding. Maricruz has expressed concern about the way their daughter would interact with a stranger.

Because of their daughter's needs and Maricruz's disabilities, Mr. Barrios is also the only one who is able to provide financially for the family. PSR ¶ 49, 52; Whiting Decl. Ex. B. He has held continuous employment while living in the United States and typically works six days per week. PSR ¶ 49, 52, 68-72.[2] When he is not working, he is a caretaker. PSR ¶ 50.

Though his family will always come first, over the past few years, Mr. Barrios has importantly demonstrated a new dedication to complying with the law. This new perspective has come from age, experience, and education. He started registering annually and has continued to do so. Aguayo Decl. ¶ 5. He has been educated that he is doing much more harm than good to his possibility of remaining in the United States by failing to register. He also now knows that registration does not automatically lead to deportation. Lastly, he knows he simply cannot go on like this where each failure to register can mean a significant custodial sentence.

At the time of his arrest in this case, Mr. Barrios was on his way to work and complying with state probation. *See* PSR ¶ 9, 32. He has continued to comply perfectly with both state probation and federal pretrial release. *See* PSR ¶ 4, 32. His state probation was terminated early due to his exceptional performance. *See* PSR ¶ 32. His compliance with pretrial release is particularly impressive given the strict conditions under which he was released. For 16 months,

---

[2] The defense notes that the PSR mistakenly reflects a gap in employment from 2018 to April 2021; Mr. Barrios reported to U.S. Probation in the interview that he was self-employed in construction, painting, carpentry, and electricity during that time. He also previously reported this employment to Pretrial Services and defense counsel.

3

from December 2019 to April 2021, Mr. Barrios complied with location monitoring with a rigid daily curfew in addition to standard conditions of release. *See* PSR ¶ 4.

## DISCUSSION

### I. The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))

Mr. Barrios stipulates to Adjusted Offense Level 13, set forth in the parties' plea agreement. He also agrees with U.S. Probation's calculation of his Criminal History Category, III, for a sentencing range of 18 to 24 months.

Mr. Barrios was eligible for a Fast Track disposition when this case was originally charged, for an Adjusted Offense Level of 9. Mr. Barrios was planning to resolve with a Fast Track disposition. Unfortunately, the Fast Track offer was contingent on Mr. Barrios agreeing to remain in custody at Santa Rita Jail. Initially, we agreed to detention and Mr. Barrios remained in jail for three months. To no fault of Mr. Barrios, however, this path became untenable. *See* Supplemental Sentencing Memorandum at 1. The defense could no longer agree to his detention at the jail, which is the reason Mr. Barrios does not receive a downward departure for Fast Track. The government has agreed to recommend a below-guidelines sentence of 10 months.

Had Mr. Barrios received Fast Track, his guidelines would be 8 to 14 months. He would also fall into Zone B of the sentencing guidelines, which explicitly allow for a either "(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e)." USSG §5C1.1(c). **The requested sentence of time served (three months imprisonment) and supervised release with a condition of home detention would be a within-Guidelines sentence.**

Although the court must remain mindful of the Guideline recommendation, the range established by the Sentencing Guidelines is not presumptively reasonable and it cannot be

4

given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991.

Under the applicable 18 U.S.C. § 3553(a) factors discussed below, Mr. Barrios respectfully requests that the Court vary downward from the low end of the advisory range to a sentence of time served (nearly three months of incarceration) and three years of supervised release, with a condition of five months of home detention.

**II.   Mr. Barrios' Family Ties and Responsibilities Warrant a Sentence of Time Served (18 U.S.C. § 3553(a)(1))**

Sentencing factor 3553(a)(1) permits the Court to consider Mr. Barrios' family ties and responsibilities. This factor is unique in Mr. Barrios' case and goes beyond that of a typical supportive father.

Mr. Barrios' family needs him to care for his autistic daughter. His wife Maricruz cannot do it on her own, especially given Maricruz's physical disabilities. They have tried to find outside help, but it is not viable either financially or practically. His daughter's needs are unique and severe. Maricruz has expressed concern that their daughter may unintentionally become physical with an outside care provider because of her difficulty communicating her needs. Mr. Barrios is also the only person who can provide financially for the family. He does so by working incredibly hard—which is another factor to be considered under 3553(a)(1).

If Mr. Barrios remains out of custody, ICE has the discretion to permit him to remain in this country while his U visa application is pending. Aguayo Decl. ¶ 7. This is the expected outcome under current guidance, if he remains out of custody. *Id*. However, if he is imprisoned, he will automatically be placed in immigration detention at the end of his federal sentence and likely be deported. *Id*. Therefore, practically speaking, whether or not Mr. Barrios is sentenced

to custody has both a short- and long-term effect on his ability to fulfil needed family responsibilities.

### III. The Nature and Circumstances of the Offense Warrant a Sentence of Time Served (18 U.S.C. § 3553(a)(1))

As set forth in the Background section above, in the PSR, and among many letters of support, Mr. Barrios is a non-violent offender who only re-entered this country because he was forced to choose between violating the law and abandoning his incredibly needy family. This motivation also explains his criminal history over the past two decades and his criminal history points. As described above, Mr. Barrios does not have normal family circumstances. His motivation and intent behind committing the crime, even if misguided, are relevant and warrant a downward variance.

Despite his offenses, Mr. Barrios is a hard worker and valued member of the community. *See* Ricardo Decl. ¶ 5; Whiting Decl. Ex B-I. Furthermore, over the past three years he has importantly proven his ability to comply with every law, court order, and condition of supervision. He was compliant, working hard, and taking care of his family at the time of his arrest for the instant offense, all of which has continued on pretrial release.

### IV. The Offense is Relatively Less Serious and a Sentence of Time Served is Just Punishment (18 U.S.C. § 3553(a)(2)(A))

While Mr. Barrios takes responsibility for his criminal conduct, the scope of his offense should be viewed in relation to other federal cases and other illegal re-entry cases. The fact is that Mr. Barrios only came back into this country, a country he has lived in since he was a minor, after he faced the alternative of abandoning his family. Unlike some defendants, Mr. Barrios did not come into this country with the intention to commit new crimes, like drug distribution. Mr. Barrios entered to re-join his family, care for his special needs daughter, and provide for his entire family financially, all of which he did. Mr. Barrios was arrested on his way to work. If Mr. Barrios' U visa is granted, re-entry into this country would no longer even be considered a crime. Lastly, had Mr. Barrios not faced the clear risk of remaining detained pretrial and therefore received a Fast Track departure, the requested sentence would be *within the sentencing guidelines*. A sentence of time served and home confinement is just punishment.

**V.    The COVID-19 Pandemic Warrants a Sentence of Time Served or an Alternative to Incarceration, Given the Kinds of Sentences Available and Public Policy (18 U.S.C. § 3553(a)(2)(A))**

Time served is additionally warranted in this case because the further incarceration of Mr. Barrios is an unnecessary risk to his health and safety, and the safety of the community. The Court is well aware of the risks posed by the COVID-19 pandemic, and they will not be belabored here. However, it is important to note that despite significant strides, the COVID-19 virus is still very dangerous and unpredictable. The Delta variant is likely to be followed by additional variants, starting with the Lambda variant out of South America. U.C. Davis Health, *Delta variant: 8 things you should know about this COVID-19 strain*, (July 23, 2021), available at https://health.ucdavis.edu/coronavirus/covid-19-information/delta-variant.html. The danger is especially prominent in jails and prisons. First, this is largely due to "overcrowding, lack of resources, and little access to medical care." Kayla Hui, *The State of COVID-19 in U.S. Prisons*, Verywell Health (July 9, 2021), available at https://www.verywellhealth.com/prisons-covid-delta-variant-5191964. Second, this is due to the low rate of vaccination among carceral staff. *Id*. Mr. Barrios should not be re-incarcerated in this dangerous time, especially not for a non-violent and victimless crime of illegal re-entry.

**CONCLUSION**

For the aforementioned reasons, the Court should sentence Mr. Barrios to a term of time served (three months) and five additional months of home confinement, as a condition of three years of supervised release.

Respectfully submitted,

Dated:   August 4, 2020

GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California

_____/S_____
SOPHIA WHITING
Assistant Federal Public Defender